IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELIQUE KIDD | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.: |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| EDDIE BOYD III | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff Angelique Kidd, ("Ms. Kidd") and for her cause of action against Defendant Eddie Boyd III, ("Defendant Boyd") states:

## INTRODUCTION

1. Defendant Boyd arrested Angelique Kidd after Ms. Kidd asked Boyd his name.

2. This is a civil action for violation of Angelique Kidd's civil rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

## PARTIES

3. Angelique Kidd is a citizen of the United States of America, and at all times described in this Complaint has been a resident of the City of Ferguson, State of Missouri.

4. Defendant Eddie Boyd III is a sworn peace officer employed by the City of Ferguson. All of Defendant Boyd's actions set forth in this Complaint were done under color of law. Eddie Boyd is sued in his individual capacity.

1

## JURISDICTION AND VENUE

5. This cause is brought pursuant to 42 U.S.C. §1983. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), since the Defendant is located, and all of the incidents giving rise to this suit occurred, in this judicial district.

## FACTS

6. On November 12, 2015 at around 7:30 pm, Angelique Kidd was with her daughter at their family home on the 600 block of Ballman Avenue in Ferguson, Missouri.

7. Ms. Kidd heard a loud knock on the front door and when she opened it, the man standing before her motioned to the street in front of her home and asked whether she knew the man lying in the street. There was, in fact, a man lying on the other side of the street in front of her home. The man who knocked stated that the man in the street had already been run over three times.

8. Ms. Kidd stepped out onto her front porch and told her daughter to lock the door behind her. Ms. Kidd then walked to within approximately ten feet of the man on the street and began to loudly ask whether he was okay. The man lying in the street neither moved or responded. Ms. Kidd observed blood on his face.

9. The man who had summoned her told Ms. Kidd he had called 911. When Ms. Kidd saw the lights of emergency vehicles approaching, she returned to her house and watched from behind her glass storm door.

10. Shortly after, Ms. Kidd saw her neighbor, Jean Hagens ("Hagens"), walking toward the scene in her nightclothes. What Ms. Kidd observed was unusual for two reasons – Hagens rarely ventured outside, let alone in her nightclothes.

11. As Ms. Kidd approached Hagens, she heard Hagens asking whether the man in the street was, "my Ben?" Ms. Kidd attempted to calm Hagens. At one point, after Hagens recognized that the man in the street was indeed her husband, Ben, she repeated over and over that they needed to pick up his glasses.

12. As the women stood in the street in an embrace, an officer approached and told them to move back. The women immediately moved to the Hagens' front yard.

13. After the women moved to the Hagens' front yard, Ms. Kidd noticed that Defendant Boyd had followed them. Defendant Boyd began to question Ms. Kidd about her involvement in the circumstances leading to Ben Hagens' injury.

14. Ms. Kidd denied any involvement in the injury-causing event and denied having heard or seen anything involving it.

15. Ms. Kidd asked Defendant Boyd whether he was recording the encounter. She then asked his name.

16. Defendant Boyd refused to provide his name and instead told Ms. Kidd to leave. She again asked for Defendant Boyd's name and he repeated the command that she leave.

17. It was at this point that Defendant Boyd arrested Ms. Kidd.

18. Hagens pleaded on Ms. Kidd's behalf, telling Defendant Boyd that Ms. Kidd's daughter was alone and expressing concern for her well-being. She requested that Defendant Boyd not arrest Ms. Kidd. Defendant Boyd alleged that he smelled alcohol on Ms. Kidd's breath and threatened to call the Missouri Department of Social Services (DSS).

19. Defendant Boyd took Ms. Kidd to the Ferguson Police Department around 8:00pm. She was booked and placed in a holding cell. At around 9:00pm, Ms. Kidd was told by an officer that she had two options regarding her freedom that evening. If she posted

$100.00, she could be released immediately; if not, she would be held until midnight and then released.

20. Ms. Kidd did not pay the $100. She was released from custody before midnight on November 12, 2015.

21. Ms. Kidd later made a complaint and subsequently conversed with Police Chief Anderson. Among other things, Chief Anderson informed Ms. Kidd of his impending resignation from the Ferguson Police Department, claiming that he could only effect change in Ferguson if he was not himself a part of the Police Department. He also stated that if he (Chief Anderson) was present, Ms. Kidd would not have been arrested.

22. Ms. Kidd has been a Ferguson resident since 2004. She is well-known in the community and has consistently participated in peaceful protests of the Ferguson Police Department following the killing of Michael Brown by a Ferguson Police Officer in 2014. She worked at the Ferguson Public Library for approximately two years and continues to volunteer. Additionally, Ms. Kidd has been on the Ferguson Civilian Review Board Task Force since 2014. She regularly volunteers at the Ferguson Farmer's Market, community garden and St. Stephen's Church Food Bank. Ms. Kidd is familiar and known to officers of the Ferguson Police Department.

23. As of the filing of this Complaint, Ms. Kidd is charged with violation of Ferguson Municipal Code Provision 29-16. – Failure to Comply with Order of Police Officer, arising from the events alleged in this Complaint.

## CAUSES OF ACTION

### COUNT I

### UNLAWFUL SEIZURE OF MS. KIDD BY DEFENDANT BOYD COGNIZABLE UNDER 42 U.S.C. § 1983

For her cause of action against Defendant Boyd in Count I, Ms. Kidd states:

24. By this reference, Ms. Kidd incorporates each and every allegation and averment set forth in paragraphs 1 through 23 as though fully set forth herein.

25. Defendant Boyd did not have probable cause to arrest Ms. Kidd.

26. Defendant Boyd seized Ms. Kidd, the seizure was unreasonable, and Defendant Boyd thereby deprived Ms. Kidd of her right to be free from unreasonable seizure of her person in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States.

27. As a direct result of the conduct of Defendant Boyd described in this Complaint, Ms. Kidd suffered damages including fear, anxiety, depression, consternation and emotional distress. She was seized and placed in handcuffs in the presence of her young daughter, taken away from her young daughter and threatened that her daughter would be taken by DSS. Ms. Kidd was seized and remains seized by virtue of the charges instigated by Defendant Boyd.

28. The acts of Defendant Boyd described herein were intentional wanton, malicious, and/or were callously indifferent to the rights of Ms. Kidd, thus entitling her to an award of punitive damages against Defendant Boyd.

29. If Ms. Kidd prevails she is entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angelique Kidd respectfully prays that this Court enter judgment in her favor and against Defendant Boyd for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other this Court deems just and appropriate.

## COUNT II

### RETALIATION BY DEFENDANT BOYD AGAINST MS. KIDD COGNIZABLE UNDER 42 U.S.C. § 1983

For her cause of action against Defendant Boyd in Count II, Plaintiff states:

30. Plaintiff incorporates by reference the allegations and averments contained in paragraphs 1 through 29 of this complaint as though fully set forth herein.

31. Ms. Kidd was engaged in lawful First Amendment activities when she talked with, and questioned Defendant Boyd, and/or his actions, performed in his capacity as a law enforcement officer.

32. Ms. Kidd was engaged in lawful First Amendment activities when she requested the name of Defendant Boyd as he acted in his capacity as a law enforcement officer.

33. A police officer stopping, seizing, arresting, incarcerating, and charging a person, supporting charges against a person by writing an Incident Report, standing ready to testify to the substance of what is written against a person, and testifying to what is written against a person would chill a person of ordinary firmness from continuing to question, challenge, and record police activity.

34. Defendant Boyd acted in retaliation against Ms. Kidd, and for the purpose of deterring Ms. Kidd from exercising her rights under the First Amendment to question, challenge,

6

and record Defendant Boyd's actions in his capacity as a law enforcement officer, and to identify him in his individual and official capacity.

35. The conduct of Defendant Boyd in stopping, seizing, arresting, incarcerating, and charging Ms. Kidd, supporting charges against Ms. Kidd by writing an Incident Report, standing ready to testify to the substance of what he wrote against Ms. Kidd, and testifying to what he wrote against Ms. Kidd, violates the First Amendment of the United States Constitution in that Defendant Boyd deprived Ms. Kidd of her rights to free speech, free assembly, and free association by acting in retaliation against Ms. Kidd, and for the purpose of deterring Ms. Kidd from questioning or challenging Defendant Boyd's actions in his capacity as a law enforcement officer, or identifying him in his individual and official capacity.

36. As a direct and proximate cause of the conduct of Defendant Boyd, Ms. Kidd suffered injuries and damages, including but not limited to: great concern for her own safety and for the safety of her child; fear, apprehension, depression, anxiety, consternation and emotional distress; suppression of her First Amendment right to freedom of speech, punishment for exercising her First Amendment rights; interference with her family relationships; lost time; loss of faith in society; and attorney's fees.

37. The acts of Defendant Boyd described herein were intentional, wanton, malicious, and/or were callously indifferent to the rights of Ms. Kidd, thus entitling her to an award of punitive damages against Defendant Boyd.

38. If she prevails, Ms. Kidd is entitled to recover attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angelique Kidd respectfully prays that this Court enter judgment in her favor and against Defendant Boyd for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other this Court deems just and appropriate.

Respectfully Submitted,

_____
Blake A. Strode (# 68422MO)

_____
Edward Hall (# 0012692IA)

*/s/ Stephen M. Ryals*
Stephen M. Ryals (# 34149MO)

*/s/ Thomas B. Harvey*
Thomas B. Harvey (# 61734MO)

ArchCity Defenders
812 N. Collins St.
St. Louis, MO 63102
Tel: 855-724-2489
Local: 314-361-8834
Fax: 314-925-1307